UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GENIA LOUISE MANN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-CV-201-CVE-FHM |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner, ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Now before the Court is the Report and Recommendation (Dkt. # 19) of the magistrate judge recommending that the Court affirm the decision of the Commissioner of Social Security denying plaintiff's claim for disability benefits. Plaintiff has filed an objection (Dkt. # 20) to the Report and Recommendation, and defendant has not filed a response to plaintiff's objection.

**I.**

On August 2, 2012, plaintiff applied for disability benefits and plaintiff was found to be not disabled. Dkt. # 10, at 84. Plaintiff requested reconsideration of the initial denial of her application, and the initial denial was affirmed on reconsideration. Id. at 94. Plaintiff requested a hearing before an administrative law judge (ALJ).

A hearing was held before an ALJ on July 1, 2013, and plaintiff was represented by counsel at the hearing. Counsel represented that plaintiff's primary impairment was deep vein thrombosis for which she took Coumadin or Warfarin, and counsel claimed that plaintiff needs to keep her right leg elevated for long periods of time. Id. at 50. Plaintiff finished the ninth grade but she did not obtain a GED. Id. at 53. Plaintiff's driver's license was suspended and she does not have a valid

license. Id. at 53-54. Plaintiff lives with her mother and her mother provides transportation for her. Id. at 54. She smokes two to three packs of cigarettes per week. Id. Plaintiff takes Warfarin, a blood thinner, and Cyclobenzaprine, a muscle relaxant, and she does not incur any cost for her prescriptions. Id. at 56. Plaintiff can take care of her personal needs such as dressing and bathing and she helps with cooking. Id. at 57. Plaintiff stated that she sometimes cannot get back on her feet after standing or walking for an hour and a half, even after an hour or two of rest. Id. at 60. Plaintiff's blood thinner, Warfarin, makes her feel nauseous and she sometimes vomits. Id. at 62. Her doctors have told her that she needs to rest and elevate her right leg if she has circulatory problems, but she is also supposed to change position after elevating her leg for 30 minutes. Id. at 65-66. She spends about 60 percent of her day lying down with her right leg elevated. Id. at 66. The ALJ called a vocational expert (VE) to testify, and the VE testified that plaintiff's past relevant work included fast food worker, grocery bagger, and dietary aide. Id. at 70-71. The ALJ posed a series of hypotheticals and there were jobs the hypothetical claimant could perform, but the VE testified that a person would generally be precluded from working if she had to elevate her leg for 90 minutes every day or miss more than one day of work per month. Id. at 74-75.

The ALJ entered a written decision denying plaintiff's claim for disability benefits. At step two, the ALJ found that plaintiff had the severe impairment of deep vein thrombosis of the right leg, but the impairment did not meet or exceed an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that plaintiff had following the residual functional capacity (RFC):

> [Plaintiff] was 46 years of age on the protective filing date of her application for Supplemental Security Income (SSI) (August 20, 2008) (she is currently 47 years of age . . . ) with a 9th grade education (1981) with past relevant work identified by the [VE] in this case to include that of fast food crew worker (1997-1998, 1999-2000, 2001); nursing home work (2000); worker at a youth academy (2000). With respect to lifting, carrying, pushing and pulling, she is limited to light and sedentary work.

> With respect to walking or standing, she is limited to 2 hours (combined total) of an 8-hour workday with regular work breaks. She is able to climb ramps or stairs only occasionally, is able to bend, stoop, crouch, and crawl not more than occasionally and is unable to climb ropes, ladders, and scaffolds, or work in environments where she would have to be exposed to unprotected heights and dangerous machinery parts. She is unable to perform tasks requiring overhead reaching more than occasionally and is further unable to perform tasks requiring the use of foot pedals more than occasionally.

Id. at 38. The ALJ considered plaintiff's testimony that she needed at least a two hour break after standing for 90 minutes and that sitting for longer than 20 to 30 minutes stressed her right leg and foot. Id. at 39. The ALJ also noted plaintiff's claim that her physician told her that she needed to elevate her right leg and that plaintiff spent 60 percent of her day lying down with her leg elevated. Id. The findings of a consultative examination showed that plaintiff could bear weight on her right leg and she had a stable and steady gait. Id. Plaintiff completed a function report in which she stated that she could lift no more than five pounds and that standing, squatting, and bending caused her physical pain. Id. The ALJ noted that the medical evidence in the administrative record was "scant" and she did not have any substantial problem with sitting, and that there was no medical evidence supporting plaintiff's claim that she needed to elevate her right leg for most of her day. Id. at 39-40. The ALJ found that plaintiff was unable to perform her past relevant work but, considering her age, education, and work experience, she could work as a document scanner, security system monitor, and product inspector. Id. at 41. There were jobs in the regional and national economies that plaintiff could perform and the ALJ found that plaintiff was not disabled at step five.

**II.**

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within fourteen days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. FED. R. CIV. P. 72(b).

## III.

Plaintiff argues that the ALJ erred by failing to discuss medical evidence concerning her diagnosis of deep vein thrombosis, because it was insufficient for the ALJ to simply note that plaintiff had an impairment without discussing any limitations stemming from the condition. Dkt. # 20, at 14. Plaintiff also argues that the ALJ conducted an inadequate credibility analysis and that the ALJ should have consulted medical literature to determine the appropriate treatment for deep vein thrombosis.

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id*. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him]

4

> from performing [his] past relevant work. *See Id.* Even if a claimant is so impaired, the agency considers, at step five, whether [he] possesses the sufficient residual functional capability to perform other work in the national economy. *See Id.*

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The ALJ decided this case at step five of the analysis. At step five, the ALJ must consider a claimant's RFC, age, education, and work experience to determine if other work exists that a claimant is able to perform. Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). If the claimant can adjust to work outside of her past relevant work, the ALJ shall enter a finding that the claimant is not disabled. 42 U.S.C. § 423(d)(2)(A). However, the ALJ must find that a claimant is disabled if insufficient work exists in the national economy for an individual with the claimant's RFC. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010). The Commissioner bears the burden to present sufficient evidence to support a finding of not disabled at step five of the review process. Emory v. Sullivan, 936 F.2d 1092, 1094 (10th Cir. 1991).

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

Plaintiff argues that the ALJ erred by failing to discuss medical records related to plaintiff's deep vein thrombosis. The medical evidence shows that plaintiff reported to the emergency room on June 30, 2010 due to increased leg pain and a venous doppler study was performed. Dkt. # 10, at 225-37. The notes do not contain any recommendation that plaintiff elevate her right leg. On May 10, 2011, plaintiff was suffering from leg pain and she had trouble breathing. Id. at 237-45. The evidence shows that plaintiff was advised to stop smoking and to rest, but there were no instructions concerning elevating her right leg. Johnson Gourd, M.D., conducted a consultative examination and noted plaintiff's prior diagnoses of deep vein thrombosis and reactive airway disease, but Dr. Gourd remarked that plaintiff's complaints of leg pain seemed exaggerated and plaintiff could bear weight on her right leg. Id. at 248-49. Treatment records from July 2011 to January 2013 show that plaintiff complained of leg pain and she had her medication adjusted, but the records do not show that any functional limitations were noted or that plaintiff was medically required to elevate her leg. Id. at 255-66.

The ALJ did not discuss the medical evidence in substantial detail, except for Dr. Gourd's consultative examination, but plaintiff has not shown that the ALJ actually omitted any functional limitation from the RFC or that the failure to discuss the medical evidence in detail had any bearing on the outcome. The ALJ found at step two that plaintiff had deep vein thrombosis and the RFC included substantial limitations on plaintiff's ability to walk and stand. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ clearly noted that plaintiff had deep vein thrombosis, and plaintiff has not identified any functional limitations identified in the medical evidence that were not included in the RFC. Even though the

evidence cited by plaintiff was not specifically discussed by the ALJ, there is no basis for the Court to conclude that the ALJ ignored the relevant medical evidence when ruling on plaintiff's claim for disability benefits.

Plaintiff argues that the ALJ's credibility analysis was inadequate and that the case should be remanded for more detailed credibility findings. Dkt. # 20, at 20. "Credibility determinations are peculiarly the province of the finder of fact," and such determinations are not to be upset "when supported by substantial evidence." Diaz v. Sec'y of Health and Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). Nonetheless, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence." Hutson v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988). Factors an ALJ may weigh in determining a claimant's credibility include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Hutson, 838 F.2d at 1132. An ALJ must look beyond objective medical evidence in evaluating claims of disabling pain. Luna v. Bowen, 834 F.2d 161, 165-66 (10th Cir. 1987). An ALJ must give specific reasons for his findings and such findings must be closely linked to substantial evidence. Kepler v. Chater, 68 F.3d 387, 390 (10th Cir. 1995). However, an ALJ does not need to provide a "formalistic factor-by-factor review of the evidence"; an ALJ needs only to "set[] forth the specific evidence he relies on in evaluating the claimant's credibility." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Common sense should guide the review of an ALJ's credibility determination and technical perfection is not required. Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166-67 (10th Cir. 2012).

Plaintiff makes four specific challenges to the ALJ's credibility analysis: (1) the ALJ incorrectly stated that the medical evidence was "scant;" (2) the ALJ improperly reduced plaintiff's credibility due to evidence that she smokes cigarettes; (3) the ALJ gave too much weight to the "short" consultative examination; and (4) the ALJ erroneously stated that plaintiff did "not have considerable problems with sitting." Dkt. # 20, at 20-26. Plaintiff's first argument is essentially repetitious of his argument that the ALJ failed to fully discuss the medical evidence, and the Court has not found that the ALJ's alleged failure to discuss the specific evidence identified by plaintiff supports reversal of the ALJ's decision. The Court also does not find that this undermines the ALJ's credibility analysis. Plaintiff argues that the ALJ improperly reduced her credibility based on evidence that plaintiff smoked cigarettes, but she testified during the hearing that she had substantially reduced the number of cigarettes she smoked per week. However, the medical evidence shows that plaintiff was directed to stop smoking, not simply reduce her cigarette intake, and the ALJ properly considered evidence that plaintiff smoked cigarettes as a basis to reduce her credibility. See Dkt. # 10, at 237. Plaintiff claims that the ALJ gave undue weight to the limited examination conducted by the consultative examiner, and the findings of the consultative examiner did not conflict with plaintiff's testimony that her physicians verbally directed her to elevate her right leg. The Court finds that the consultative examiner's findings were consistent with the medical evidence and the ALJ properly relied on this evidence when formulating the RFC. The medical evidence established that plaintiff had deep vein thrombosis and the consultative examiner considered plaintiff's subjective complaints of leg pain, but he found that the objective evidence and his own observations suggested that plaintiff was exaggerating the severity of her symptoms. Id. at 249. The administrative record contains no evidence aside from plaintiff's testimony that she was

required to elevate her leg and it not clear that she conveyed this information to the consultative examiner, and the ALJ properly considered the consultative examiner's findings when assessing plaintiff's credibility. Finally, plaintiff objects to the ALJ's statement that there was no evidence that plaintiff had difficulty sitting. This statement is adequately supported by the lack of objective medical evidence supporting any restriction on the amount of time plaintiff can sit without changing position. The Court finds that the ALJ's credibility findings are supported by substantial evidence and this is not a basis to remand the case.

Plaintiff argues that the ALJ erred by failing to consult medical literature or call a medical expert to obtain additional evidence about the need for plaintiff to elevate her right leg.[1] Dkt. # 20, at 15. She claims that the magistrate judge misconstrued her argument and incorrectly suggested that plaintiff was using a journal article as evidence to establish the existence of a disability, and there is Tenth Circuit precedent allowing journal articles to be considered as evidence in support of a claimant's position. Dkt. # 20, at 17. In Watson v. Barnhart, 194 F. App'x 526 (10th Cir. Sep. 6, 2006),[2] the Tenth Circuit found that a medical journal article could not be considered as evidence of a disability, and the existence of a disability must be established by the medical evidence. The Court rejects plaintiff's argument that the ALJ should have considered journal articles concerning the elevation of an extremity as treatment for deep vein thrombosis, because plaintiff incorrectly

---

[1] Although plaintiff mentions that the ALJ could have called a medical expert, this argument is not developed in plaintiff's opening brief or her objection to the report and recommendation. See Dkt. # 12, at 12; Dkt. # 20, at 15. The focus of her argument is on the ALJ's failure to cite medical literature on the treatment of deep vein thrombosis, and the Court will not attempt to construct an argument for plaintiff on any alleged failure by the ALJ to call a medical expert to testify about this issue.

[2] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

assumes that the ALJ entirely discredited plaintiff's testimony that she needs to elevate her right leg. Instead, the ALJ considered plaintiff's testimony and found that there was "no medical directive for her to spend that much time resting her lower extremity." Dkt. # 10, at 40. The ALJ included limitations as to standing and walking in the RFC, in part, based on plaintiff's testimony, but he found that the medical evidence did not support plaintiff's claim that she needed to spend at least 60 percent of her time resting with her right leg elevated. He did not question that this was an appropriate treatment for deep vein thrombosis but, instead, he found insufficient medical evidence that would support plaintiff's claim concerning the length of time that she needed to elevate her right leg. Consideration of a journal article explaining that elevation of an extremity is an appropriate treatment for deep vein thrombosis was irrelevant, because the ALJ considered plaintiff's testimony on this issue and the ALJ's conclusion that the medical evidence did not support plaintiff's claims concerning the length of treatment was supported by substantial evidence. The Court finds no reversible error from the ALJ's failure to specifically mention journal articles concerning the appropriate treatment for deep vein thrombosis.

**IT IS THEREFORE ORDERED** that the Report and Recommendation (Dkt. # 19) is **accepted**, and the Commissioner's decision denying plaintiff's application for disability benefits is **affirmed**. A separate judgment is entered herewith.

**DATED** this 22nd day of August, 2016.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE